IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| IN RE: HAWAII STATE ASBESTOS CASES | ) ) ) | CIVIL NO. 11-00400 LEK-RLP |
| This Document Applies To: | ) ) ) | |
| ROGER E. NELSON and ROSALIE J. NELSON, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| CRANE COMPANY, etc., et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER GRANTING DEFENDANT'S MOTION TO STAY
ALL PROCEEDINGS PENDING A DECISION ON TRANSFER
BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Before the Court are: Plaintiffs Roger E. Nelson and
Rosalie J. Nelson's ("Plaintiffs") Motion to Remand, filed
June 30, 2011 (dkt. no. 9); and the Motion to Stay All
Proceedings Pending a Decision on Transfer by the Judicial Panel
on Multidistrict Litigation ("Motion to Stay"), filed by
Defendant Air & Liquid Systems Corporation, successor-by-merger
to Buffalo Pumps, Inc. ("Buffalo"), on July 13, 2011 (dkt. no.
58). On August 8, 2011, Buffalo and Defendant Crane Company
("Crane") each filed a memorandum in opposition to the Motion to
Remand (dkt. nos. 79, 81). Plaintiffs filed their reply on
August 15, 2011 (dkt. no. 85). Plaintiffs filed their memorandum
in opposition to the Motion to Stay on August 8, 2011 (dkt. no.

78), and Buffalo filed its reply on August 15, 2011 (dkt. no. 84).[1]

These matters came on for hearing on August 29, 2011. Appearing on behalf of Plaintiffs were Gary Galiher, Esq., L. Richard DeRobertis, Esq., Diane Ono, Esq., Ilana Waxman, Esq., Todd Eddins, Esq., Michael Ragsdale, Esq., Scott Saiki, Esq., and Clarisse Kobashigawa, Esq. Appearing on behalf of Buffalo were Steven Hisaka, Esq., and James Scadden, Esq. Appearing on behalf of Crane were Lee Nakamura, Esq., and Joseph Kotowski, III, Esq. Appearing on behalf of Ingersoll were John Lacy, Esq., and Corlis Chang, Esq. Appearing on behalf of Goulds was Christopher Goodwin, Esq.[2] After careful consideration of the motions,

---

[1] On August 8, 2011 and August 16, 2011, Defendant Ingersoll Rand Co. ("Ingersoll") and Defendant Goulds Pumps, Inc. ("Goulds"), respectively, each filed a statement of no opposition to the Motion to Stay. [Dkt. nos. 80, 88.]

[2] Counsel for the following parties, which did not respond to either motion, also appeared at the hearing: Ewing Martin, III, Esq., and Bradford Chun, Esq., for Defendants Aurora Pump Company ("Aurora"), IMO Industries, Inc., individually and as successor-in-interest to Delaval Turbine, Inc., and formerly known as IMO Delaval, Inc., Transamerica Delaval, Inc., and Delaval Steam Turbine Company ("IMO"), and Warren Pumps, LLC ("Warren Pumps"); Gail Kang, Esq., for Defendants Bayer Cropscience, Inc., successor in interest to Rhone-Poulenc AG Company, formerly known as Amchem Products Inc., formerly known as Benjamin Foster Products Company ("Bayer"), and Union Carbide Corporation ("Union"); Craig Kugisaki, Esq., for Defendant Metropolitan Life Insurance Company ("Met Life"); Michael O'Connor, Esq., for Defendant the William Powell Company ("William Powell"); Erica Mullen Chee, Esq., for Defendant Georgia-Pacific Corporation ("Georgia-Pacific"); Cathy Gee Kong, Esq., for Defendant Kaiser Gypsum Company, Inc. ("Kaiser
(continued...)

supporting and opposing memoranda, and the arguments of counsel, Buffalo's Motion to Stay is HEREBY GRANTED for the reasons set forth below, and the case, including Plaintiffs' Motion for Remand is HEREBY STAYED until **November 8, 2011**.

## BACKGROUND

Plaintiffs filed their Complaint on May 17, 2011 in the Circuit Court of the First Circuit, State of Hawai`i ("the State Court"). The case was identified as <u>Nelson v. Crane Co., et al.</u>, Civil No. 11-1-0998-05 (RAN) ("<u>Nelson</u>").

The Complaint states that Roger Nelson served in the United States Navy ("Navy") from approximately 1960 to 1968 "aboard the following ships: USS Mansfield (DD-728) [("Mansfield")], which was in Pearl Harbor Naval Shipyard during the times [he] was on board, and USS Cockrell (DD-366) [("Cockrell")] which was homeported at Pearl Harbor in 1962." [Complaint at ¶ 6.] Rosalie Nelson is his wife. [<u>Id.</u> at ¶ 1.]

The Complaint identified the following defendants: Crane, Aurora, Bayer, Union, Buffalo, Defendant Certainteed Corporation ("Certainteed"), Cleaver-Brooks, Goulds, IMO, Ingersoll, John Crane, Lynch, Met Life, Warren Pumps, William

---

[2](...continued)
Gypsum"); Aimee Oyasato, Esq., for Defendants John Crane, Incorporated ("John Crane"), Cleaver-Brooks, Inc. ("Cleaver-Brooks"), and the Lynch Co., Inc. ("Lynch"); and John Montalbano, Esq., for Defendant Kelly-Moore Paint Company, Inc. ("Kelly-Moore").

Powell, Kaiser Gypsum, Kelly-Moore, and Georgia-Pacific (all collectively "Defendants").

The Complaint alleges that, *inter alia*, Bayer, Union, Certainteed, John Crane, Lynch, Kaiser Gypsum, Kelly-Moore, and Georgia-Pacific (collectively "General Supplier Defendants")

> manufactured, sold and/or supplied certain generically similar asbestos products which were ultimately used by insulators and others, and/or to which they came in contact, while working in their trades and occupations in the State of Hawai`i and other locations. . . . [They] also manufactured, sold and/or supplied certain generically similar asbestos products to Pearl Harbor Naval Shipyard and other shipyards and ships for use in the general overhaul, building, refitting and maintenance of ships.

[Id. at ¶ 5.]

The Complaint also alleges that Crane, Aurora, Buffalo, Cleaver-Brooks, Goulds, IMO, Ingersoll, Met Life, Warren, and William Powell (collectively "Navy Contractor Defendants")

> sold and supplied certain equipment to the United States Navy and Pearl Harbor Naval Shipyard and other shipyards, which contained asbestos gaskets and/or packing, required asbestos insulation, or required other asbestos containing parts to function properly; and also sold replacement component parts for their equipment, including asbestos gaskets and packing which were identical to their commercial counterparts.

[Id.]

Plaintiffs allege that Roger Nelson "was repeatedly exposed to great quantities of asbestos from Defendants' asbestos-containing products and equipment" when he worked on the

4

Mansfield and the Cockrell.  [Id. at ¶ 6.]  Plaintiffs also

allege that he "was repeatedly exposed to asbestos from

Defendant's (sic) asbestos drywall products", including asbestos

containing joint compound, from approximately 1956 to 1978 while

performing home repair work at his homes in California and

Virginia.  [Id.]  During all of these times, Roger Nelson

allegedly inhaled asbestos dust and fibers from Defendants'

products.  Plaintiffs claim that this exposure directly and

proximately caused him to develop "malignant mesothelioma and

other asbestos-related diseases and injuries to his lungs, chest

cavity, cardiovascular system and other parts of his body[.]"

[Id.]  Plaintiffs did not discover his conditions until about

March 2011.  [Id.]

        The Complaint alleges the following claims:

1) negligence ("Count I");[3]
2) strict liability ("Count II");[4]
3) breach of express and implied warranty against the General
     Supplier Defendants ("Count III");

---

[3] Plaintiffs' negligence claim against the Navy Contractor
Defendants is based solely upon the "negligent failure to warn of
the dangers of asbestos."  [Complaint at ¶ 9.]  Their negligence
claim against the General Supplier Defendants is based upon the
negligent failure to warn, as well as negligent design,
manufacture, selection of materials, assembly, inspection,
testing, maintenance for sale, marketing, distribution, lease,
sale, recommendation and delivery of their products in an unsafe
condition, failure to discover defects, and failure to find
suitable non-asbestos materials.  [Id. at ¶ 8.]

[4] As with the negligence claim, the only strict liability
claim against the Navy Contractor Defendants is based upon a
failure to warn theory.  [Complaint at ¶ 16.]

4) a claim against the General Supplier Defendants alleging liability for Roger Nelson's injuries in proportion to each of their shares of the asbestos materials market ("Count IV");

5) a claim against the General Supplier Defendants alleging liability based on a theory of industry-wide or enterprise liability ("Count V");

6) a claim against the General Supplier Defendants alleging that they intentionally caused Roger Nelson's injuries by knowingly delivering products in an unsafe and defective condition ("Count VI");

7) loss of consortium by Rosalie Nelson ("Count VII");

8) a claim that Met Life conspired to conceal information about the hazards that asbestos posed to workers and bystanders in the industry ("Count VIII");[5] and

9) a claim for punitive damages because Defendants, as early as 1929, possessed medical and scientific data indicating that asbestos and asbestos-containing products were hazardous to the health of Roger Nelson and others in similar positions, but they ignored and disregarded this data ("Count IX").

Plaintiffs seek: general, special, and punitive damages; costs incurred; prejudgment interest; and any other appropriate relief. [Id. at pg. 15.]

## I. **Removal**

On June 22, 2011, Buffalo filed its Notice of Removal of Civil Action Under 28 U.S.C. Sections 1442 and 1446 ("Notice of Removal").[6]  [Dkt. no. 1.]  Buffalo asserted that § 1442

---

[5] Count VIII names "Defendants Met Life, Johns-Manville, Raybestos-Manhattan and others" as the alleged conspirators. [Complaint at ¶ 36.]  Johns-Manville and Raybestos-Manhattan, however, are not named defendants.

[6] On June 22, 2011, the following Defendants also filed notices removing Nelson from the state court: Crane; IMO; and Warren Pumps.  Each notice resulted in the opening of a separate civil docket number.  Cf. Savelesky v. Allied Packing & Supply Inc., No. C 11-01778 SI, 2011 WL 2610179, at *3 (N.D. Cal. July 1, 2011) ("[U]nlike the general removal statues, under section
(continued...)

applies because the instant case involves a person, Buffalo, acting under the authority of either a United States officer or agency. [Notice of Removal at ¶ 1 (citation omitted).] Buffalo also claims that any equipment that it manufactured for the Navy to be used aboard Navy vessels or in Navy shipyards "was manufactured under the direction and control of a federal officer." [Id. at ¶ 6 (citing Exh. 2 (Decl. of Ret. Adm. Roger Horne); Exh. 3 (Aff. of Martin Kraft)).] Buffalo claims that it manufactured and designed equipment for the Navy according to the Navy's detailed specifications and that the Navy enforced those specifications and exerted close control over all design specifications, including equipment warnings. [Id.]

Also on June 22, 2011, Buffalo filed its Notice of Tag-Along Action.[7] [Dkt. no. 5.] It notifies the Court that the case is a potential "tag-along action" subject to transfer to the United States District Court for the Eastern District of Pennsylvania ("MDL Court") pursuant to 28 U.S.C. § 1407 under a July 29, 1991 order by the Judicial Panel on Multidistrict Litigation ("MDL Panel").

---

[6](...continued)
1442, not all defendants need concede to removal. One defendant in a multi-defendant case can unilaterally remove the entire case to federal court if it meets the requirements of section 1442." (citations omitted)). Those cases numbers are, respectively: CV 11-00402 LEK-KSC; CV 11-00405 LEK-BMK; and CV 11-00406 LEK-RLP.

[7] Counsel for Goulds entered an appearance on June 30, 2011, [dkt. no. 15,] and also filed a tag-along notice [dkt. no. 17].

7

## II. **Remand**

### A. **Plaintiffs' Motion to Remand**

Plaintiffs point out that their negligence and strict liability claims against Buffalo, Crane, IMO, and Warren (collectively "Removing Defendants"[8]) "are based exclusively on the Removing Defendants' failure to warn the end users of their equipment about asbestos." [Mem. in Supp. of Motion to Remand at 1; id. at 5-6 (identifying the Removing Defendants).] Plaintiffs contend that the Removing Defendants cannot rely on the government contractor defense set forth in Boyle v. United Technologies Corp., 487 U.S. 500 (1988), to support federal officer removal jurisdiction.

Plaintiffs argue that the Ninth Circuit has held that, as a matter of law, the Boyle defense does not apply in asbestos failure-to-warn claims if the Navy did not prohibit its contractors from placing asbestos warnings on their products. [Id. at 1 (citing In re Hawaii Federal Asbestos Cases, 960 F.2d 806 (9th Cir. 1992)).] In order to justify removal, the Removing Defendants must establish that their state law duty to warn conflicted with their Navy contracts and that they were acting under a federal officer's direction when they failed to include a warning about asbestos. Plaintiffs argue that the Removing

_____

[8] Presumably, the arguments relating to the Removing Defendants also apply to the other Navy Contractor Defendants, even if they were not the ones who removed the case.

Defendants cannot establish either requirement.

Plaintiffs argue that the dispositive issues associated with the Motion to Remand are whether the Removing Defendants have a colorable government contractor defense and whether there is the required causal connection between Plaintiffs' claims and the acts that the Removing Defendants performed under the color of a federal office.  Plaintiffs acknowledge that federal authority is split on these issues.  [Id. at 7.]

Plaintiffs assert that the United States Supreme Court and the Ninth Circuit require more than a mere assertion of federal immunity to establish a colorable defense.  A colorable defense must be supported by plausible facts establishing the essential elements of the defense, even if the facts are disputed.  [Id. at 7-8 (citing Mesa v. California, 489 U.S. 121, 133 (1989); Thomas v. Anchorage Equal Rights Commission, 165 F.3d 692, 705 (9th Cir. 1999)).[9]]  Plaintiffs note that numerous

_____

[9] Plaintiffs state that in Thomas:
> [T]he Ninth Circuit explained that "[t]he term 'colorable' certainly is not meaningless." Rather, the legal term "colorable" means "seemingly **valid and genuine**."  [Thomas v. Anchorage Equal Rights Comm'n, 165 F.3d 692, 705 (9th Cir. 1999).]  Thus, the Thomas Court described "a consensus among courts of appeals that the **colorable-basis standard 'requires some evidence tending to show the existence of the essential elements of the defense.'"**  Id.
> (citations omitted) . . . .

[Mem. in Supp. of Motion to Remand at 8 (some alterations and emphases in Mem. in Supp.).]  The Ninth Circuit, however, granted
(continued...)

9

district courts within the Ninth Circuit have found that there was no colorable Boyle defense in failure to warn claims against asbestos manufacturers. [Id. at 9 (citing cases).]

Plaintiffs also argue that the Removing Defendants cannot establish that the Navy caused them to omit asbestos warnings, which Plaintiffs contend state law required them to provide. If the government simply remained silent in the face of a decision the contractor made of its own accord, that is not sufficient to justify federal officer removal. [Id. at 53-54 (quoting Holdren v. Buffalo Pumps, 614 F. Supp. 2d 129, 142, 150 (D. Mass 2009)).]

Plaintiffs therefore urge the Court to remand Nelson back to the State Court.

B.     **Buffalo's Opposition to the Motion to Remand**

Buffalo argues that the Court should deny the Motion to Remand because federal officer jurisdiction pursuant to § 1442 applies in this case. Buffalo argues that, all that is required to establish a colorable defense for purposes of removal based on federal officer jurisdiction is a showing of good faith removal and that removal was not without foundation. [Mem. in Opp. to Motion to Remand at 3 (citing Colorado v. Symes, 286 U.S. 510,

_____

⁹(...continued)
rehearing, and withdrew this opinion. 192 F.3d 1208 (1999). The en banc opinion withdrew the original opinion. 220 F.3d 1134 (2000) (en banc). The en banc opinion does not discuss the issue of what constitutes a colorable claim.

519 (1932)).] Even assuming, *arguendo*, that a finding of a
colorable defense requires proof that all the elements of the
defense exist, Buffalo asserts that there is evidence, much of it
undisputed, to support each element of the defense.

Buffalo next argues that the Ninth Circuit has recently
rejected the argument that, in order to establish the government
contractor defense, a defendant must prove the government either
specifically prohibited all warnings or explicitly dictated the
content of a warning.  [Id. at 4 (quoting Getz v. The Boeing Co.,
No. 10-15284, – F.3d –, 2011 WL 3275957, at *11 (9th Cir. Aug. 2,
2011)).]  Buffalo notes that Plaintiffs do not contest the
evidence that the Navy approved the warnings for Buffalo's pumps.
Buffalo therefore argues that it has a colorable government
contractor defense and that removal was proper.  [Id. at 4 & 24-
26 (listing cases).]

Buffalo argues that Plaintiffs erroneously assert
Buffalo must present some admissible evidence that it was acting
under a federal officer's direction when it failed to include
asbestos warnings on its products.  Even if Plaintiffs are
correct, Buffalo argues that it provided such evidence with its
Notice of Removal and with its memorandum in opposition to the
Motion to Remand, including declarations which establish that the
Navy exercised stringent control over production and warnings.
Buffalo contends that these declarations show that: the Navy

provided precise specifications for Buffalo's pumps, including warnings; Buffalo complied with those specifications; the Navy strictly controlled Buffalo's written materials, including warnings; and, during the period in question, the Navy was more knowledgeable about asbestos than Buffalo was.

Buffalo argues that the Court should not rely on Plaintiffs' speculative evidence. Further, Plaintiffs' evidence, at best, creates an issue of fact as to the Navy's control over warnings. Buffalo argues that, in the context of the colorable defense requirement for federal officer removal, the facts must be viewed in the light most favorable to the removing party. [Id. at 28-29 (citing Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010)).] Buffalo therefore urges the Court to deny the Motion for Remand.

In its memorandum in opposition, Crane also urges the Court to deny the Motion to Remand, based the same analysis set forth in Crane's memorandum in opposition to the motion to remand in CV 11-00402.

## C.  **Plaintiffs' Reply**

In their reply, Plaintiffs argue that Buffalo misstates controlling Supreme Court and Ninth Circuit case law. Plaintiffs also emphasize that Buffalo's primary expert witness previously testified that he would have expected the Navy to allow asbestos warnings in technical manuals once the Navy was aware of the

dangers of asbestos.  Plaintiffs argue that "[t]his eviscerates
Buffalo's entire removal petition."  [Remand Reply at 1.]

Plaintiffs note that <u>Hagen</u> is not binding precedent on
other district courts merely because it is from the MDL district.
Further, it is contrary to Supreme Court and Ninth Circuit law.
[<u>Id.</u> at 1-2, 4 (citing <u>Correctional Services v. Malesko</u>, 534 U.S.
61, 74 n.6 (2001); <u>Mesa v. California</u>, 489 U.S. 121, 133 (1989);
<u>Thomas v. Anchorage Equal Rights Commission</u>, 165 F.3d 692, 705
(9th Cir. 1999)).]

Although Plaintiffs acknowledge that § 1442 must be
liberally construed, they argue that there is no Supreme Court or
Ninth Circuit case requiring the Court to resolve all doubts in
favor of removal or to presume all factual allegations in support
of removal to be true for purposes of a motion to remand.  In
fact, all of the applicable cases hold that there are limits to
the broad construction of § 1442.  [<u>Id.</u> at 3-4 (some citations
omitted) (citing <u>Colorado v. Symes</u>, 286 U.S. at 519, 521; <u>Watson
v. Phillip Morris</u>, 127 S. Ct. 2301, 2305 (2007)).]

Plaintiffs argue that <u>Getz</u>, 2011 WL 3275957, supports
their position.  That case involved a helicopter crash in bad
weather, and one of the plaintiffs' claims was based on the
failure to warn.  The Ninth Circuit held that the government
exercised control over the content of the warnings because the
Army wrote the helicopter's entire technical manual, including

13

warnings regarding engine failure in bad weather.  In contrast,
in the present case, Buffalo drafted its own technical manuals,
which were required to include safety precautions.  Further,
Defendants included warnings about other hazardous products in
their technical manuals from the 1940s to the 1970s, but Buffalo
did not begin warning about asbestos until the 1980s.  Moreover,
Getz is an inadequate warning case, unlike the instant case which
involves the absence of any warning.

　　　　Finally, Plaintiffs emphasize that Buffalo has no
documents showing that the Navy exercised discretion regarding
warning end users about asbestos.  Plaintiffs argue that "'a
federal court may not hypothesize subject matter jurisdiction.'"
[Id. at 20 (some citations omitted) (quoting Ruhrgas A.G. v.
Marathon Oil Co., 526 U.S. 574, 577 (1999)).]

**III. Stay**

　　　　A.　　**Buffalo's Motion to Stay**

　　　　Buffalo seeks a stay of all proceedings, including any
consideration of the Motion to Remand, pending the MDL Panel's
decision on transfer of this case to MDL No. 875.

　　　　Buffalo notes that MDL No. 875 was established in the
MDL Court "for co-ordination of all pretrial proceedings in
federal product liability actions involving claims of injury from
asbestos exposure."  [Mem. in Supp. of Motion to Stay at 2
(citing In re Asbestos Products Liability Litigation (No. VI),

14

771 F. Supp. 415 (J.P.M.L. 1991)).] Buffalo notes that, by the time of the filing of the Motion to Stay, 85,778 cases had been transferred to the MDL Court. [Id. at 3 (citing Exh. 3 (Conditional Transfer Order (CTO 418))).] Buffalo contends that Nelson "is no different from those [cases] previously transferred to MDL 875," because it involves common questions of law and fact regarding liability for injuries allegedly caused by exposure to asbestos or asbestos containing products. [Id. at 4.]

Buffalo argues that courts consider three factors when determining whether to grant a stay: "(1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the potential for prejudice to the non-moving party." [Id. at 6 (citation omitted).] Buffalo argues that all of these factors favor a stay in this case.

Buffalo asserts that it will suffer prejudice absent a stay because it could face "duplicative proceedings and needlessly duplicative costs" if it must engage in "discovery, case management, motion practice and other pretrial proceedings in this Court, when there is a strong likelihood that this case will be transferred to the MDL for just such purposes." [Id. at 8.] Buffalo asserts that, even if the Court rules on the Motion to Remand, there may be a renewed motion to remand before the MDL

15

Court.  [Id. (citing Exh. 12 (MDL No. 875 Admin. Order No. 18
(providing procedures for seeking remand))).]

Buffalo argues that any prejudice Plaintiffs will
suffer from a stay would be minimal.  Buffalo notes that the MDL
Panel consolidated the handling of asbestos cases to benefit
plaintiffs as a whole.  Further, any stay would likely be brief
in light of the schedule associated with the motion to vacate the
conditional transfer order.

Buffalo argues that the Court should consider the
Motion to Stay before addressing the Motion to Remand.  Buffalo
notes that, in McClelland v. Merck & Co., 2007 WL 178293 (D. Haw.
Jan. 19, 2007), this district court identified a three-step
analysis for the consideration of simultaneous motions to remand
and stay.  First, the court preliminarily assesses whether
removal was clearly improper.  If so, the court should rule on
the motion to remand.  If, however, the remand presents difficult
factual or legal issues, the court should next consider whether
similar issues have been raised in other cases involving
potential transfer to the MDL proceeding.  If so, the court
should proceed to the third step and consider the merits of the
motion to stay.  Buffalo argues that, under this analysis, a stay
is warranted in the instant case.

Finally, Buffalo notes that numerous courts within the
Ninth Circuit have ruled that In re Hawaii Federal Asbestos Cases

16

does not foreclose federal officer removal by manufacturers of equipment installed on Navy vessels.  Buffalo therefore urges the Court to grant its Motion to Stay without ruling on the Motion to Remand.

### B.   **Plaintiffs' Memorandum in Opposition**

Plaintiffs argue that allowing the MDL Court to rule on a motion to remand is not efficient.  According to Plaintiffs, there are remand motions pending there that are over a year old, and at least one case was transferred back for trial without a ruling on the motion for remand, even though the case was with the MDL Court for over five years.  [Mem. in Opp. to Motion to Stay at 1 (citing Exh. D (docket sheet for <u>Hays, et al. v. Foster Wheeler Energy Corp., et al.</u>, No. 2:09-cv-93728-ER); <u>Cardaro v. Aerojet Gen. Corp.</u>, Civil Action No. 05-2684, 2010 WL 3488207 (E.D. La. Aug. 27, 2010)).]

Plaintiffs emphasize that the MDL Court has expressly stated that local district courts wishing to address jurisdictional issues in motions to remand may do so while the MDL Court considers the plaintiffs' objections to the conditional transfer orders.  [<u>Id.</u> at 6 (citing <u>In re Asbestos Prods. Liability Litig. (No. VI)</u>, No. 875, 1996 WL 143826, at *1 n.2 (Jud. Pan. Mult. Lit. Feb. 16, 1996)).[10]]  Plaintiffs reiterate

---

[10] Plaintiff attached a copy of 1996 WL 143826 to their memorandum in opposition to the Motion to Stay as Exhibit A to
(continued...)

that numerous courts have granted motions to remand in cases with the same procedural posture and based on the same evidence as in this case.  Plaintiffs also argue that this Court must determine its jurisdiction as a threshold matter before considering a stay. [Id. at 7 (citing Ruhrgas A.G. v. Marathon Oil Company, 526 U.S. 574, 577 (1999); Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)).]

Plaintiffs emphasize that:

Roger Nelson is alive, but dying of mesothelioma. He is not expected to survive much longer.  If this case is remanded back to State court in August 2011, then this Nelson case can be included in the August 2011 state court trial setting conference and can be set for trial in May 2012 in Hawai`i State Court.

[Id. at 8 (citations omitted).]

Plaintiffs argue that neither the factual nor legal issues in the Motion to Remand are difficult and that a stay would be contrary to Ortiz v. Menu Foods, Inc., 525 F. Supp. 2d 1220 (D. Hawai`i 2007).  Finally, Plaintiffs emphasize that Ninth Circuit case law applies to this case and that transfer to the MDL Court is only for pretrial proceedings.  When the case is transferred back for trial in eighteen to twenty-four months, Ninth Circuit case law will still apply.  Plaintiffs therefore argue that this Court should rule on the jurisdictional issues

---

[10](...continued)
the Declaration of Counsel.

under Ninth Circuit case law now.

C.   **Buffalo's Reply**

Buffalo argues that the instant case is factually similar to McClelland and factually distinguishable from Ortiz. Buffalo claims that Plaintiffs did not address McClelland because they cannot dispute that it applies.  Buffalo otherwise reiterates arguments from its Motion to Stay.

**DISCUSSION**

This district court has stated that:

> When considering a motion to stay, district courts in the Ninth Circuit consider the following factors: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."[11]

Ortiz v. Menu Foods, Inc., 525 F. Supp. 2d 1220, 1232 (D. Hawai`i 2007) (some citations omitted) (quoting Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)).  Ortiz, however, also recognizes that:

> Courts have held that when jurisdictional issues are in dispute, a motion to remand should be resolved prior to the determination of whether a stay is appropriate.  Smith v. Mail Boxes, Etc., 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) (citing Good v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (granting stay pending MDL transfer decision after considering jurisdictional issues in remand motion); Tortola

---

[11] The Court will refer to these three factors as the "Ortiz Factors".

Rest., L.P. v. Kimberly-Clark Corp., 987 F. Supp.
1186, 1188-89 (N.D. Cal. 1997) (denying stay
motion and addressing merits of motion to remand);
Kohl v. Am. Home Products Corp., 78 F. Supp. 2d
885, 888 (W.D. Ark. 1999) (granting stay following
determination that removal was proper and denial
of remand was warranted); Aetna U.S. Healthcare,
Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp. 2d
1042, 1047 (D. Kan. 1999) (reasoning that
preliminary jurisdictional issue should be
determined on motion to remand before court
considers staying the action)). "However, the
calculus changes somewhat when deference to a MDL
court will further 'the uniformity, consistency,
and predictability in litigation that underlies
the MDL system.'" McClelland v. Merck & Co., CIV.
No. 06-00543 JMS/BMK, 2007 WL 178293, *2 (D. Haw.
Jan. 19, 2007) (quoting Leeson v. Merck & Co.,
Inc., No. S-05-2240 WBS PAN, 2006 WL 3230047 (E.D.
Ca. Jan. 27, 2006)) (citation omitted).

When considering simultaneous motions to
remand and motions to stay the proceedings,
district courts employ a three-step methodology.
First, "a court should . . . give preliminary
scrutiny to the merits of the motion to remand.
If this preliminary assessment suggests that
removal was improper, the court should promptly
complete its consideration and remand the case to
state court." Id. (quoting Meyers v. Bayer AG,
143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001));
Conroy v. Fresh Del Monte Produce, Inc., 325 F.
Supp. 2d 1049, 1053 (N.D. Cal. 2004). If "the
jurisdictional issue appears factually or legally
difficult, [however,] the court's second step
should be to determine whether identical or
similar jurisdictional issues have been raised in
other cases that have been or may be transferred
to the MDL proceeding." Id. (quoting Meyers, 143
F. Supp. 2d at 1049); Conroy, 325 F. Supp. 2d at
1053. A court should only proceed to the third
step and consider the motion to stay "if the
jurisdictional issue is both difficult and similar
or identical to those in cases transferred or
likely to be transferred." Meyers, 143 F. Supp.
2d at 1049; McClelland, 2007 WL 178293, at *2;
Conroy, 325 F. Supp. 2d at 1053.

Id. at 1232-33 (alterations in Ortiz) (footnote omitted).  Thus,

before considering the _Ortiz_ Factors, this Court must apply the _McClelland_ three-step analysis to determine whether it should rule upon the Motion to Remand before considering whether a stay is appropriate.

## I. **McClelland Analysis**

In the first step, this Court must conduct a preliminary review of the merits of Plaintiffs' Motion to Remand. Both Plaintiffs and the Removing Defendants argue that there are numerous cases supporting their respective positions in cases involving a motion to remand with a similar procedural posture and based on similar evidence as in the instant case. [Mem. in Opp. to Motion to Stay at 7, 19-26; CV 11-00402 LEK-KSC, Crane's Mem. in Opp. to Motion to Remand, filed 8/8/11 (dkt. no. 51), at 16-17.] Further, Plaintiffs have acknowledged that there is conflicting federal case law on the critical legal issues in the Motion to Remand. [Mem. in Supp. of Motion to Remand at 7 ("The dispositive issues before the court are whether Defendants have a colorable government contract defense to their admitted failure to warn of asbestos hazards as required by state law, and whether Defendants have established the requisite causal connection. Federal authority is split.").] Thus, after a preliminary assessment of the Motion to Remand, the Court cannot find that the removal was improper. The Court emphasizes that its analysis of the first _McClelland_ step is only for purposes of the this

Order; and it is not necessarily an indication of how this Court will rule on the Motion to Remand.

The Court therefore proceeds to the second step of the McClelland analysis and considers whether courts in other cases subject to transfer to the MDL Court have considered similar jurisdictional issues.  The purpose of the second step is "because it is only for the purpose of furthering judicial economy and consistency that the transferee court should decide the jurisdictional issue." Ortiz, 525 F. Supp. 2d at 1232 n.2 (citing Meyers, 143 F. Supp. 2d at 1049).  In this Court's view, there is no dispute that this step supports consideration of the Motion to Stay because both Plaintiffs and the Removing Defendants have argued extensively that this Court should be persuaded by how other courts have ruled on similar legal issues and on similar evidence.  Thus, allowing the MDL Court to decide the remand issue would further judicial economy and consistency.

The Court therefore finds that the jurisdictional issues in this case are "both difficult and similar or identical to those in cases transferred or likely to be transferred." See id. at 1233.  The Court will consider whether a stay is appropriate in this case prior to ruling on the merits of the Motion to Remand.

## II.  **Ortiz Factors**

First, the Court must consider the prejudice to

22

Plaintiffs if the Court grants a stay.  The Court acknowledges
that Mr. Nelson is "dying of mesothelioma" and "is not expected
to survive much longer."  [Mem. in Opp. to Motion to Stay at 8
(citation omitted).]  Thus, it is clearly in Plaintiffs'
interests to have the case as a whole resolved as expeditiously
as possible.  At the hearing on the motions, Plaintiffs' counsel
argued extensively about the disadvantages to Plaintiffs and the
potential delay if the case is transferred to the MDL Court.  The
issue currently before this Court, however, is not whether the
case should be transferred, but whether the case should be stayed
until the MDL Panel renders a final transfer decision.  In the
context of the first <u>Ortiz</u> Factor, the Court must consider
whether Plaintiffs will suffer prejudice if the Court grants a
stay pending the MDL Panel's decision, not whether Plaintiffs
will suffer prejudice if the case is transferred.  The hearing on
Plaintiffs' objections to the MDL Panel's conditional transfer
order is scheduled for the week of September 26, 2011.  Counsel's
representations at the hearing on the motions indicated that the
MDL Panel may render a final decision on the transfer of this
case at the hearing or shortly thereafter.  Thus, a stay in this
case until the MDL Panel renders its decision would likely be
brief.  Without diminishing the significance of Plaintiffs'
concerns for the seriousness of Mr. Nelson's health, the Court
finds that Plaintiffs have not established that they will be

unduly prejudiced by a brief stay of this case pending the MDL
Panel's final transfer decision.

Second, the Court considers the hardship and inequity
to Buffalo if the Court denies the Motion to Stay.  Buffalo
asserts that it will suffer prejudice because it could face
"duplicative proceedings and needlessly duplicative costs" if
this case moves forward in this district court while the MDL
Panel's final decision is still pending.  [Mem. in Supp. of
Motion to Stay at 8.]  Buffalo notes that it faces multiple
similar actions across the country and, without transfer to the
MDL Court, it must litigate the same issues based on the same
evidence in multiple courts and it must risk inconsistent rulings
on the same pretrial matters.  As in the first factor, the Court
emphasizes that a stay pending the MDL Panel's decision will
likely be brief and therefore it is unlikely that Buffalo will
face significant "discovery, case management, motion practice and
other pretrial proceedings in this Court" during that time.
[Id.]  The only significant development in this case that is
likely to occur during the period in question is a ruling on the
Motion to Remand.  Even if the Court ruled on the Motion to
Remand, the dissatisfied party could file a motion for
reconsideration, and that motion would likely be pending when the
MDL Panel renders its transfer decision.  Further, Buffalo has
noted that, regardless of this Court's ruling on the Motion to

24

Remand, it may be forced to re-litigate the issue in a renewed motion before the MDL Court. [Id. (citing Exh. 12 (MDL No. 875 Admin. Order No. 18 (providing procedures for seeking remand))).] Buffalo has faced, and will face, similar remand issues in other cases before the MDL Court. Thus, although the Court emphasizes that it is not a substantial consideration in this case, the Court finds the denial of a stay would impose some hardship and inequity upon Buffalo.

Finally, in light of the possible lack of a final resolution on the Motion to Remand and the possible re-litigation of the issues before the MDL Court, a stay pending the MDL Panel's final transfer decision would save this Court's judicial resources by avoiding duplicative litigation if the case is transferred.

Having considered all of the Ortiz Factors, the Court FINDS that a brief stay of this case, including Plaintiffs' Motion to Remand, is appropriate to allow the MDL Panel to render a final decision on whether to transfer the instant case to the MDL Court. The Court emphasizes that, in light of the scheduled hearing before the MDL Panel next week, the stay will be brief. Further, if the MDL Panel does not issue a decision within a reasonable amount of time after its hearing, this Court will issue a ruling on the Motion to Remand.

## CONCLUSION

On the basis of the foregoing, Buffalo's Motion to Stay All Proceedings Pending a Decision on Transfer by the Judicial Panel on Multidistrict Litigation, filed July 13, 2011, is HEREBY GRANTED. The entire case, including Plaintiffs' pending Motion to Remand, is HEREBY STAYED until **November 8, 2011**. If the MDL Panel has not ruled on the transfer of this case by that time, this Court will issue a ruling on Plaintiffs' Motion for Remand.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 26, 2011.



_/S/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

**IN RE: HAWAII STATE ASBESTOS CASES ROGER E. NELSON, ET AL. VS. CRANE COMPANY, ETC., ET AL; CIVIL NO. 11-00400 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING A DECISION ON TRANSFER BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**